TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division
LAUREN E. BORDER (Cal. Bar No. 327770)
Assistant United States Attorney
Transnational Organized Crime Section
CLIFFORD D. MPARE (Cal. Bar No. 337818)
Assistant United States Attorney
Major Crimes Section
  1400/1300 United States Courthouse
  312 North Spring Street
  Los Angeles, California 90012
  Telephone: (213) 894-8231/4962
  Facsimile: (213) 894-0141
  E-mail: lauren.border@usdoj.gov
     clifford.mpare@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>     v.<br><br>CYNTHIA RAYGOZA,<br> aka "Cynthia Curiel Curiel,"<br>ASHLEIGH BROWN,<br> aka "ice_out_ofla,"<br> aka "corn_maiden_design," and<br>SANDRA CARMONA SAMANE,<br> aka "Sandra Karmona,"<br> aka "Sandra Carolina Carmona<br> Samame,"<br> aka "Sandra Carmona Samame,"<br><br>   Defendants. | No. 2:25-cr-00780-SVW<br><br>GOVERNMENT'S SUR-REPLY TO <u>DEFENDANT ASHLEIGH BROWN'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITAL, OR FOR A NEW TRIAL</u><br><br>Hearing Date: TBD<br>Hearing Time: TBD<br>Location: Courtroom of the<br>     Hon. Stephen V.<br>     Wilson |

   Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Lauren E. Border and

Clifford D. Mpare, hereby files its Sur-Reply to ASHLEIGH BROWN's Reply in Support of Motion for Judgment of Acquittal, or for a New Trial (dkt. 222 ("Brown Reply").)  The government submits this sur-reply in compliance with the Court's order dated May 15, 2026. (Dkt. 230.)

This sur-reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 28, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
LAUREN E. BORDER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Brown's reply in support of her motion for acquittal or a new trial rests on a distorted reading of the recent Supreme Court decision <u>Chiles v. Salazar</u>, 146 S. Ct. 1010 (2026), offering the Court neither meaningful context nor an accurate account of the decision's holding.  Rather than engaging with the Supreme Court's analysis, Brown selectively quotes isolated dicta to suggest that her conviction cannot stand and that <u>United States v. Osinger</u>, 753 F.3d 939 (9th Cir. 2014), has been implicitly overruled.  That approach mischaracterizes both cases.  When read in full, <u>Chiles</u> does not announce any sweeping change in First Amendment doctrine, nor does it undermine longstanding precedent recognizing that speech integral to criminal conduct falls outside constitutional protection.

Properly understood, <u>Chiles</u> reinforces — rather than disrupts — the principles that govern this case.  In <u>Chiles</u>, the Supreme Court addressed a narrow circumstance involving the content-based regulation of pure speech in the context of talk therapy, and expressly distinguished such situations from laws targeting conduct that may incidentally involve speech.  Defendants' actions here fall squarely in the latter category.  Brown's attempt to recast a course of coordinated, intimidating conduct as protected expression ignores both the factual record and the governing legal framework.  Because <u>Chiles</u> is fully consistent with <u>Osinger</u> and existing First Amendment doctrine, Brown's arguments provide no basis to disturb defendants' convictions.

## II.   ARGUMENT

Brown provides the Court with no meaningful background or context regarding the Chiles decision.  See generally Brown Reply.  Instead, she selectively extracts a handful of dicta statements to argue that her conviction must be overturned and United States v. Osinger, 753 F.3d 939 (9th Cir. 2014), is no longer good law.  As explained below, this argument is both misleading and unsupported, as it relies on isolated language while ignoring the decision's actual holding and its continued consistency with controlling precedent.

### A.   Chiles Confronts the Regulation of Pure Speech and Content Discrimination

In Chiles, the Supreme Court addressed an as-applied challenge to a Colorado statute prohibiting "conversion therapy" for minors.  The Colorado law bars "any practice or treatment ... that attempts ... to change an individual's sexual orientation or gender identity," including efforts to "change behaviors or gender expressions or to eliminate or reduce sexual or romantic attractions toward individuals of the same sex."  Chiles, 146 S. Ct. at 1018.  At the same time, the statute permits counselors to provide "[a]cceptance, support, and understanding for ... identity exploration and development," as well as assistance for individuals "undergoing gender transition."  Id.

Chiles, a mental-health counselor, objected to Colorado's law "only as it applies to her talk therapy, therapy that involves no physical interventions or medications, only the spoken word" because it "strip[s] her of her First Amendment right to speak freely with her clients."  Id. at 1018.  Thus, the Court considered the First Amendment implications of the Colorado law in the "narrow" context of when a therapist engages only in talk therapy.  Id. at 1017, 1020

2

(emphasizing "[a]ll Ms. Chiles offers is talk therapy" and "she does not prescribe any medicines [or] perform any physical treatments"); id. at 1020 ("Ms. Chiles stresses that she provides only talk therapy").

The Court rejected the lower courts' characterization of Chiles's counseling as regulable professional conduct and instead held that her practice constitutes protected speech.  See id. at 1023.  It further concluded that the statute engages in viewpoint discrimination, noting it "does not just regulate the content of Ms. Chiles's speech" but also "goes a step further, prescribing what views she may and may not express."  Id. at 1024.  Given these significant First Amendment concerns, the Court held the lower courts did not apply sufficiently rigorous scrutiny to the Colorado law. Id.

Importantly, the Supreme Court explicitly acknowledged that "laws regulating conduct in ways that incidentally sweep in speech may [ ] generally avoid strict scrutiny."  Id. at 1022.  It noted that, in many applications, Colorado's ban may permissibly "address conduct—such as aversive physical interventions."  Id. at 1023.  The decisive inquiry, however, is whether the government "seeks to apply [the] law to speech alone."  Id. at 1025 (emphasis added).

**B.    Chiles Supports Defendants' Convictions**

Chiles is entirely consistent with defendants' conviction in this case because Chiles concerned the regulation of pure speech and not conduct.  See, e.g., Chiles, 146 S. Ct. at 1025 ("All Ms. Chiles does is speak—and, as far as she is concerned, speech is all Colorado seeks to regulate.").  Brown accuses the government as "re-labeling" Brown's speech as "conduct" to avoid First Amendment scrutiny.

3

(Brown Reply 10.)  But this case is a far cry from regulating what therapists can say during talk therapy.  As outlined in the government's opposition, at a minimum the evidence at trial showed that, aiding and abetting each other, defendants: (1) followed R.H. home from work while wearing masks and all black;[1] (2) threatened physical violence; (3) live-streamed to strangers R.H.'s neighborhood block, the license plate of R.H.'s personal car, and R.H.'s and J.H.'s identifying features, including tattoos; (4) covered up the license plate of Brown's car with a black cloth in response to police sirens; and (5) twice live-streamed their location in Baldwin Park to incite others to arrive on scene and continue intimidating R.H.  Any expressive aspects of defendants' speech were integral to their criminal conduct intentionally harassing and intimidating R.H. and his family.

Relying on dicta, Brown argues that <u>Chiles</u> held that the speech-incident-to-conduct exception applies "only when the activity at issue 'bears a close causal connection to some separately unlawful conduct like a traditional crime.'"  (Brown Reply 9-10.)  That is not what the Court said.  As noted above, the Supreme Court noted at the outset that "laws regulating conduct in ways that incidentally sweep in speech may also generally avoid strict scrutiny."  <u>Chiles</u>, 146 S. Ct. at 1022.  The Court later elaborated:

> [T]he focus [in speech-incident-to-conduct cases] lies on two entirely different questions: [1] whether the law in question restricts speech only because it is integrally related to unlawful conduct—or [2] whether the law restricts expressive

---

[1] Brown states that the government has conceded Brown "reasonably believed she was documenting an ICE raid."  (Brown Reply 10.)  Not so.  The government argued in closing that while defendants "might not have known at this exact moment . . . where they were following [R.H.]," they "learned pretty soon that they . . . were following him home."  (Brown Mot. Ex. C at 107:3-8.)

conduct only for reasons unrelated to its content. Illustrative of the first category, this Court has held that strict scrutiny does not apply to regulations aimed at speech promoting the sale of contraband because such speech is often bound up with traditional criminal conduct. Illustrative of the second category, "an ordinance against outdoor fires" would not require a court to apply strict scrutiny even if it prohibited burning a flag in protest, because the law forbids conduct without regard to the message it may convey.

Id. at 1026. Both questions are answered in the affirmative here, so strict scrutiny does not apply.

First, defendants' anti-ICE expressions were integral to their unlawful conduct stalking and harassing R.H. and his family. See, e.g., Cal. Penal Code § 653.2 (criminalizing electronic harassment).[2] Second, defendants' conviction is not predicated on their anti-ICE expressions. Rather, they were convicted because they committed acts that caused substantial emotional distress to R.H. and his family. The stalking statute, 18 U.S.C. § 2261A, is content-neutral and does not discriminate based on viewpoint. The fact that defendants yelled anti-ICE statements here does not change the analysis; a stalking conviction could just as readily be sustained if R.H. had engaged in the same harassing conduct toward Brown, while expressing pro-ICE views to cause her emotional distress. Chiles thus makes clear the stalking statute is not unconstitutional as applied to defendants' conduct.[3]

---

[2] Brown also concedes that trespass is a crime (Brown Reply 14), while ignoring the fact that she parked and stood in a private driveway during her harassment of R.H. See Brown Mot. Ex. B at 88:15-18 (R.H. testimony that he found it "odd because person number three [Brown] was standing in my neighbor's front yard within a few feet from their home entrance wearing a ski mask").

[3] Brown also claims the jury instructions invited the jury to convict Brown only for her speech because there was "no requirement that the jury find separate unprotected non-speech conduct." (Brown Reply 12.) But no party disputes that defendants engaged in conduct

*(footnote cont'd on next page)*

5

### C.    *Chiles* Did Not Overturn *Osinger*

In a final attempt to evade *Osinger*'s binding precedent, Brown argues that "*Osinger*'s reasoning is clearly irreconcilable with . . . *Chiles* and therefore no longer good law."  (Brown Reply 14.)  That argument fails.  As noted above, *Chiles* expressly reaffirmed the speech-incident-to-conduct exception that *Osinger* endorses.

Brown appears to now make a facial challenge to the stalking statute, asserting that *Osinger* erred by finding the stalking statute constitutional when it asked only "whether a law mostly addresses conduct and only sometimes sweeps in speech." (Id.)  This over-simplification misstates *Osinger*'s analysis.  The *Osinger* court found that the "proscribed acts [in the stalking statute] are tethered to the underlying criminal conduct and not to speech." *Osinger*, 753 F.3d at 944.  That reasoning directly tracks *Chiles*, which asked "whether the law in question restricts speech only because it is integrally related to unlawful conduct."  *Chiles*, 146 S. Ct. at 1026. *Osinger* further emphasized the stalking statute requires both malicious intent on the part of the defendant and substantial harm to the victim, such that "it is difficult to imagine what constitutionally-protected speech would fall under these statutory prohibitions."  *Osinger*, 753 F.3d at 944 (cleaned up).

Far from being undermined by *Chiles*, *Osinger* is fully consistent with it and remains binding authority.

---

such as live-streaming R.H.'s neighborhood.  Moreover, as explained in the government's opposition, the challenged instructions are routinely used in stalking prosecutions nationwide. (Dkt. 219 at 21.) Appellate review does not turn on speculative concerns that the jury may have treated all of defendants' acts as communications and convicted based solely on protected expression.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests the Court uphold the jury's verdict and deny defendant Raygoza and Brown's Motions for Judgment of Acquittal or for a New Trial (dkts. 188, 213.).